UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christine F.,[1]

           Plaintiff,           Court File No.  21-cv-2048 (NEB)(LIB)

v.                       **REPORT & RECOMMENDATION**

Kilolo Kijakazi,
Acting Commissioner of Social Security,

           Defendant.

Plaintiff, Christine F. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Acting Commissioner of Social Security ("Defendant") denying her application for disability benefits.  This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g).

Both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the parties' written submissions.  [Docket Nos. 17, 19].  For the reasons discussed herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 17], be **GRANTED**, and that Defendant's Motion for Summary Judgment, [Docket No. 19], be **DENIED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

I. **Procedural History**

Plaintiff filed a Title II application for supplemental security income on March 6, 2019. (Tr. 45, 391). On April 22, 2019, Plaintiff also filed a Title II application for a period of disability and disability insurance benefits. (Tr. 45, 392-394).[2] Plaintiff alleged that her disability began on August 31, 2018, and that her disability was caused by impairments of "depression," "anxiety," "fibromyalgia," "neurological issues," "chronic back pain and neck pain," and "tumor removed from pituitary gland." (Tr. 45, 247). The Commissioner initially denied Plaintiff's present claims on September 10, 2019, and again, upon reconsideration, on December 13, 2019. (Tr. 323-327, 337-339). On January 13, 2020, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 341-342).

Administrative Law Judge Erin Schmidt (hereinafter "ALJ") conducted a hearing on August 26, 2020. (Tr. 45). Plaintiff testified at the hearing, along with an independent vocational expert, Mitchell Norman. (Tr. 45). On September 15, 2020, the ALJ issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits. (Tr. 45-59). The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 59).

Thereafter, Plaintiff sought review of the decision by the Appeals Council. (Tr. 1-7). Subsequently, on July 21, 2021, the Appeals Council denied Plaintiff's request for review. (Tr. 1-7). Accordingly, the ALJ's decision became the final decision of the Acting Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 16], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 87 exhibits. (See Administrative Record [Docket No. 16]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

On September 16, 2021, Plaintiff filed the present action. (Compl., [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the written submissions. [Docket Nos. 17, 19].

## II. Standards of Review

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council; however, the Appeals Council need not grant that request for review. See 20

3

C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals Council's action. See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled. (Tr. 1-6).

**C. Judicial Review**

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. However, judicial review of the Commissioner's decision to deny disability benefits is constrained to a determination of whether the decision is supported by substantial evidence in the record, as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007); Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the

4

Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley, 528 F.3d at 1115. The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

**III. Decision Under Review**

Before beginning the five-step disability evaluation process, the ALJ first determined that Plaintiff met the insured status requirement of Social Security Act through December 31, 2023. (Tr. 47). This finding is not in dispute.

Thereafter, the ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since August 31, 2018. (Tr. 47). This finding is not in dispute. The Court will refer to the period of time between the date Plaintiff last engaged in substantial gainful activity and the date through which Plaintiff meets the insured status requirement of the Social Security Act as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had the following severe impairments: spine disorder, fibromyalgia, migraine headaches, depression and anxiety. (Tr. 48). These findings are not in dispute.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 48). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listings 1.04, 11.02, 12.04, and 12.06. (Tr. 48-49). These findings are not in dispute.

At step four, the ALJ made the following RFC determination:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except: No exposure to potential workplace hazards such as moving machinery or unprotected heights. No fast paced production work, such as assembly line work, defined as work requiring hourly or more frequent production quotas however daily production goals are tolerated. Occasional exposure to extreme heat or extreme cold. Occasional exposure to potential pulmonary irritants such as fumes, odors, dusts, and gases. Simple routine tasks with occasional interaction with coworkers, supervisors and the general public.

(Tr. 51). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record, as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"; however, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." (Tr. 52). Plaintiff challenges this credibility finding by the ALJ.

Based on that RFC determination, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 57). Plaintiff does not challenge this finding.

Finally, at step five, the ALJ concluded that "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (Tr. 57). Relying upon testimony from independent vocational expert, Mitchell Norman ("IVE Norman"), the ALJ specifically found that, among the representative occupations, Plaintiff would be able to perform the requirements of mail clerk (Dictionary of Occupational Titles No. 209.687-026) of which there are 45,000 positions in the national economy; inspector of plastic products (Dictionary of Occupational Titles No. 559.687-074) of which there are 61,000 positions in the national economy; and housekeeper (Dictionary of Occupational Titles No. 323.687-014) of which there are 119,000 positions in the national economy. (Tr. 58). Other than an implicit challenge based on Plaintiff's other challenges, Plaintiff does not directly challenge the ALJ's findings at step five.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 58-59).

### IV. Analysis

Plaintiff asserts one overarching argument in her appeal of the ALJ's decision: the ALJ failed to properly evaluate the state agency psychological consultants' opinions. (Plf.'s Mem., [Docket No. 18], at pp. 11-16). In support, Plaintiff does not challenge the weight given by the ALJ to the state agency psychological consultants' opinions; rather, Plaintiff contends that, in finding their opinions "partially persuasive," the ALJ: 1) failed to include in the RFC the state psychological consultants' opinions that Plaintiff be limited to only "brief, infrequent, and superficial" interaction with others; or at the very least, 2) failed to explain why such a limitation was not adopted. (Id.).

"A claimant's RFC represents the most [s]he can do despite the combined effects of all of h[er] credible limitations and must be based on all credible evidence." McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011); accord, 20 C.F.R. § 404.1545(a)(1). "A disability claimant has the burden to establish h[er] RFC." Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." Id. at 591. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of a claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012).

The state agency psychological consultants provided opinions as to Plaintiff's mental capacity during the initial review in September 2019, and upon reconsideration in November 2019.

8

(Tr. 246-263). Specifically, on September 9, 2019, state agency psychological consultant, Dr. Richard Hamersma, Ph.D., opined that, in the area of concentration and persistence, Plaintiff was moderately limited in her ability to carry out detailed instructions and maintain attention and concentration for extended periods, further opining that Plaintiff had the ability to "carry out simple, routine instructions but would have difficulty with detailed ones due to her anxiety and depressive symptoms." (Tr. 261). Dr. Hamersma also opined that, in the area of social interaction, Plaintiff was moderately limited in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and was limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 261). Dr. Hamersma further opined that Plaintiff was limited to brief, infrequent, and superficial interactions with others. (Tr. 261). On November 14, 2019, a second state agency psychological consultant, Dr. Marci Mylan, Ph.D., L.P., adopted Dr. Hamersma's September 2019, opinion. (Tr. 297-298).

The ALJ addressed in her decision the state agency psychological consultants' opinions, expressly providing that their opinions were "partially persuasive." (Tr. 57). Specifically, in her decision, the ALJ considered together the opinion of Plaintiff's treating therapist, Ross Hardman, M.S., and the opinions of the state agency psychological consultants, providing that Mr. Hardman's July 9, 2020, opinion was only "partially persuasive" because Plaintiff "appeared to have moderate interaction and concentration, persistence, or maintaining pace limitations as opined by the State Agency psychological consultants," and therefore, "the opinions of Mr. Hardman and the State Agency psychological consultants [were] both partially persuasive." (Tr. 56-57). However, the Court cannot discern from this explanation which portions of state agency psychological consultants' opinions were found persuasive or unpersuasive. It is unclear to the

9

Court whether the ALJ agreed with the moderate limitations opined by the state agency psychological consultants or whether the ALJ was simply resolving conflicts between their opinions and Mr. Hardman's July 9, 2020, opinion. The only reasonable interpretation here is that the ALJ found the state agency psychological consultants' opinions persuasive as to Plaintiff being moderately limited in her ability to concentrate and persist and her ability to interact with others. (Tr. 56-57). However, the error is in the lack of clarity. See Draper v. Barnhart, 425 F.3d 1127, 1130 (8th Cir. 2005) (quoting Reeder v. Apfel, 214 F.3d 984, 988 (8th Cir. 2000) ("While a 'deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding, where the deficiency [has] no practical effect on the outcome of the case,' inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis to remand.") .

Put simply, the ALJ's discussion of specific evidence must allow for meaningful review. Scott ex rel. Scott v. Astrue, 529 F.3d 818, 822 (8th Cir. 2008) (citing Chunn v. Barnhart, 397 F.3d 667, 672 (8th Cir. 2005) ("[A] remand is appropriate where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit this Court to conclude that substantial evidence supports the Commissioner's decision."). Here, the ALJ did not explain which portions of the state psychological consultants' opinions were persuasive (or not), cite to any specific evidence to support her conclusion that their opinion was "partially persuasive," or otherwise adopt specific findings from these consultants. Without additional explanation, it is unclear to what extent the ALJ was persuaded by the state agency psychological consultants' opinions, or to what extent such findings formed the basis of Plaintiff's RFC.

Therefore, the Court finds that the ALJ's failure to explain which portions of the state agency psychological consultants' opinions were deemed persuasive (or unpersuasive) is

10

reversible error.[3]  See Willcockson v. Astrue, 540 F.3d 878, 879-80 (8th Cir. 2008) (finding that while errors and uncertainties in opinion might not individually warrant remand, combination created doubt about ALJ's rationale and required remand).  Remand is required for the ALJ to further address the state agency psychologists' consultants' opinions.[4]

---

[3] However, assuming solely for the sake of argument that the Court is correct in interpreting that the ALJ agreed with the state agency psychological consultants' opinion that Plaintiff was moderately limited in her ability to, among other things, interact with others, and more specifically, limited to brief and superficial contact with others, the ALJ failed to explain why this was not incorporated in the RFC.  While an ALJ is not required to base her RFC entirely on the opinion of one medical source, the ALJ must explain why a medical opinion was not adopted if it conflicts with the RFC. SSR 96–8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  Here, the ALJ's RFC determination excluded Plaintiff from "fast paced production work" and "simple routine tasks," which would account for the state agency psychological consultants' opinions that Plaintiff was moderately limited in maintaining concentration, persistence, and pace.  The RFC also included a limitation to "occasional interaction with coworkers, supervisors and the general public" consistent with their opinions.  However, the RFC did not contain a limitation involving brief or superficial interactions, as opined by the state agency psychological consultants.  (Tr. 51).  The ALJ should have offered an explanation as to why their opined limitation to the quality of Plaintiff's interactions with others was not incorporated in the RFC.  See SSR 96-8p ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").  Indeed, failing to incorporate this limitation may have had a potentially significant impact on this case's outcome.  See SSR 85-15, 1985 WL 56857 at *4 (noting "[a] substantial loss of ability" to respond appropriately to co-workers "would severely limit the potential occupational base").  Accordingly, assuming, arguendo, that the ALJ did find the state psychological consultants' opinions of brief and superficial contact limitations persuasive, while the ALJ could have relied on other evidence, she failed to explain why the RFC was inconsistent with these opinions.  This, too, is reversible error.

[4] The Commissioner argues that "the perceived decision writing deficiency regarding social limitations would be harmless" since the jobs identified by IVE Norman as mail clerk, inspector of plastic products, and housekeeper are "unskilled jobs[, which] ordinarily involve dealing primarily with objects, rather than data or people." (Def.'s Mem., [Docket No. 20], at p. 9).  However, this argument is unpersuasive since it is unclear from the description of the jobs in the Dictionary of Occupational Titles that these jobs do not require more than brief, superficial interactions.

## V. Conclusion

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Summary Judgment, [Docket No. 17], be **GRANTED**;

2. Defendant's Motion for Summary Judgment, [Docket No. 19], be **DENIED**; and

3. The above matter be **REMANDED** to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with the opinion above.

Dated:  July 27, 2022

s/Leo I. Brisbois  
Hon. Leo I. Brisbois  
United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).